**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT**
**WESTERN DIVISION**

| | | |
|---|---|---|
| **EUGENE KLINE, et al.** | ) | **CASE NO. 3:07CV00084** |
| | ) | |
| **Plaintiffs** | ) | |
| | ) | **JUDGE THOMAS M. ROSE** |
| **v.** | ) | |
| | ) | **DEFENDANT REIMER, LORBER** |
| **HOMEQ SERVICING** | ) | **& ARNOVITZ CO., L.P.A.'S BRIEF IN** |
| | ) | **SUPPORT OF IT'S MOTION TO** |
| **CORPORATION, et al.** | ) | **DISMISS PURSUANT TO FED. R. CIV.** |
| | ) | **P. 12(b)(6)** |
| **Defendants** | ) | |

i

## Table of Contents and Summary of Argument

I.    **Introduction** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Plaintiffs' claims are facially defective, and lack merit as pled.  One of the claims, breach of contract, is sanctionable as the Plaintiffs concede that they had no contract with the Reimer firm.

II.   **Plaintiffs' Allegations** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

Although the Plaintiffs failed to attach the relevant contract to their Complaint, this Court's review of the contract (which is not a document outside the pleadings) explains the facts behind their claims in greater detail.

III.  **Controlling Law** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

A claim will be dismissed if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46, 78 S. Ct. 99, 2 L. Ed. 2d 80 (1957).  However, conclusory statements of opinion or law need not be accepted as true.  *See Mezibov v. Allen,* 411 F. 3d 712 (6th Cir. 2005).

IV.   **Law and Argument** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

      A.    **The Fair Debt Collection Practices Act Claim Must Be Dismissed.**

            1.    **Plaintiffs Have Failed To Allege That The Reimer Law Firm Is a "Debt Collector" With Respect To Its Post Foreclosure Filing Communications On Contractual Reinstatement. In Any Event, Such Communications Are Not "Debt Collection" Activities Under The Act Since They Have Nothing To Do With Collection Of The Antecedent Contractual Debt, But With Contractual Reinstatement After Default.** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Plaintiffs have not alleged that the Reimer firm is a "debt collector" sufficient to satisfy *Montgomery v. Huntington Bank*, 346 F.3d 693 at 698 (6th Cir. 2003).

            2.    **The Alleged Mortgage Foreclosure Activities Are Outside the FDCPA** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Foreclosure litigation activities are outside the scope of the FDCPA, pursuant to *Rosado v. Taylor*, 324 F. Supp. 2d 917, 924-25 (N.D. Ind. 2004) and other authorites.

            3.    **The "Improper Charges" Regarding The Payment Of Attorneys Fees And Foreclosure Litigation Costs And Fees Arise From The Contractual Reinstatement Provision Of The Mortgage. They Are Not Debt Collection**

**Activities, Nor Are They Contrary To Any Statutory Provision Under The FDCPA Or Ohio Common Law.** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

The disputed fees and expenses do not relate to or concern the antecedent "debt" and its "collection," and are amounts "expressly authorized by the agreement creating the debt" as defined in the FDCPA. Further, such fees and expenses have been held to be permissible under the FDCPA by this Court in *Davidson v. Weltman, Weinberg & Reis*, 285 F.Supp.2d 1093 (S.D.Ohio 2003), and by Ohio courts in *Washington Mutual Bank v. Mahaffey*, 154 Ohio App.3d 44, 51 (2003) and *Wilborn v. Bank One Corp.*, 2007 Ohio 596.

**4.       The Plaintiffs Fair Debt Collection Practices Act Claims are Barred by the One-Year Statute of Limitations.** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

The allegedly improper communications from the Reimer firm, which can be considered as part of the pleadings here, occurred more than a year before the filing of this action, and the statute of limitations begins to run when a communication violating the FDCPA is sent, pursuant to *Peoples v. Wendover Funding*, 179 F.R.D. 492, 499 (D. Md. 1998).

**B.       Plaintiffs Claims Under The Ohio Consumer Sales Practices Act Also Fail As a Matter Of Law.**

**1.       The Reimer Firm is Not Alleged To Be A "Supplier" Under Ohio R.C. § 1345.01(B)**. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

Plaintiffs do not allege that the Reimer firm satisfies the statutory definition contained in Ohio R.C. § 1345.01(B), and cannot claim a violation of the CSPA against an entity not meeting that definition.

**2.       Plaintiffs' Complaint Does Not Allege Any Additional Facts Relating to the CSPA Claim in The Second Claim for Relief Than the Facts at Issue Under the FDCPA Claim.  The Complaint Does Not Allege Any Independent False Statements or Misconduct. Hence, to the Extent the FDCPA Claim Fails as a Matter of Law, so too the OCSPA Claim Fails.** . . . . . . . . . . . . . . . . . . . . . . . 19

Pursuant to *Lewis v. ACB Bus. Servs.*, 135 F.3d 389, 411-12 (6th Cir. 1998), CSPA claims failed with FDCPA claims where the factual underpinnings for both claims were same and the facts did not state a violation of the FDCPA.

**3.       Plaintiffs' CSPA Class Action Allegations Must be Dismissed.** . . . . . 20

Class actions may only be maintained under the CSPA where the conduct being challenged has previously been declared to violate the Act by an Ohio court ruling or the Ohio Attorney General. Because Plaintiffs did not allege this opint, their class action allegations must be dismissed pursuant

to Ohio R.C. § 1345.09(B) and *Marrone v. Philip Morris USA, Inc*., 110 Ohio St. 3d 5, 6 (2006).

**C.      There is No Unjust Enrichment Claim Under The Third Claim For Relief Since There Is No Allegation That The Plaintiffs Conferred A Benefit Upon The Reimer Law Firm.** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

Plaintiffs do not allege a direct transaction or contract between the parties sufficient to permit an unjust enrichment claim, as required by Ohio law, including *Johnson v. Microsoft Corp*., 106 Ohio St. 3d 278, 286 (2005).

**D.      The Fourth Claim For Relief For Breach of Contract Must Be Dismissed Because Plaintiffs Fail To Allege Any Contract Between Them And The Reimer Law Firm (And None Can Be Alleged).** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

Plaintiffs' Complaint does not allege the existence of a contract between the Plaintiffs and the Reimer firm, and the contract at issue does not name the Reimer firm as a party. Accordingly, Plaintiffs' claim for breach of contract against the Reimer firm must be dismissed.

**IV.    Conclusion** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

Plaintiffs' allegations do not state a claim for relief under the FDCPA or the CSPA. Neither do they state a claim for unjust enrichment, and a cursory review of the mortgage contract at issue reveals that the Reimer firm is not a party to the contract allegedly breached. Accordingly, Plaintiffs' claims against the Reimer firm should be dismissed.

**BRIEF IN SUPPORT**

### I.      Introduction

Plaintiffs purport to represent a class of debtors, who, in default of their contractual mortgage obligations, assert claims under the Fair Debt Collection Practices Act, 15 U.S.C §1692 *et. seq.* and Ohio's Consumer Sales Practices Act, ORC §1345.01 *et. seq*. As will be seen, the gravamen of the Complaint is that the defendants violated the FDCPA and CSPA with respect to contractual reinstatement provisions contained in the Plaintiffs' mortgage agreement which are referred to in paragraphs 12(a) and 27-28 of the Complaint. The plaintiffs invoked the mortgage reinstatement clause to set aside the foreclosure action by paying their arrearages and certain attorneys fees, court costs and litigation expenses.  Having reinstated their defaulted mortgage, they then sued the defendants over the very terms they utilized to obtain reinstatement and thereby avoid a sheriff's sale of their home.

Plaintiffs' claims are utterly without merit. Indeed, one of them is, on its face, frivolous and should subject Plaintiffs and their legal counsel to monetary sanctions under Fed. R. Civ. P. 11.  The Fourth Claim for Relief against Reimer, as one of the "defendants," is for breach of contract.  But plaintiffs have not alleged the existence of a "contract" between plaintiffs and Reimer, much less attached a copy of any such "contract" to the Complaint. As plaintiffs' counsel should know, to sue someone for breach of contract actually requires that a "contract" exist between the plaintiffs and the defendant being sued for breach. Reimer is not a party to the Mortgage and Note the plaintiffs executed on June 18, 2004  There is no contract between plaintiffs and the Reimer law firm, which acted as HomEq's litigation counsel in the underlying foreclosure action.

1

Also notably absent from the plaintiffs' Complaint is the attachment of the mortgage alleged in ¶¶12 (a),(e), 13-16, and 17. The underlying foreclosure action Complaint (as filed in the Montgomery Court of Common Pleas) attached copy of the plaintiffs' June 18, 2004 Mortgage and Note. The foreclosure Complaint is a public record and is attached to this motion and brief as Exhibit A, along with the mortgage and note at issue.

## II.    Plaintiffs' Allegations

Plaintiffs, Eugene and Constance Kline, executed a mortgage and promissory note on June 18, 2004 with WMC Mortgage Corporation.  The mortgage was assigned to HomEq Servicing Corp., a company that was servicing the mortgage debt. At some point, Plaintiffs defaulted on their payment obligations. (Complaint, ¶14).  A foreclosure action was filed against the plaintiffs in August 28, 2005 by Mortgage Electronic Registration Systems, Inc. acting through the law firm of defendant Reimer, Lorber & Arnovitz Co., LPA (the "Reimer firm") (Complaint, ¶17).

The allegations underpinning *all* of Plaintiffs' claims are found in paragraphs 2 and 18 of the Complaint:

> 2. As set forth below, defendants have engaged in misconduct in connection with the servicing[1] of residential mortgages, routinely attempting to collect attorneys' fees and expenses in situations where such fees are not permitted by federal or state law.
> * * *
> 18. During the course of these [foreclosure] proceedings, Reimer and HomEq attempted to charge and in fact charged plaintiffs for amounts which were prohibited by the FDCPA, the OSCPA, and other relevant Ohio statutory and common law.

---

[1]  It is doubtful that Reimer's actions as legal counsel for the mortgage holder in filing and litigating the foreclosure action can, in  ordinary language usage, be claimed to be "servicing...residential mortgages..."

2

More specifically, the Complaint alleges that the defendants "improperly charged" them for (1) attorneys fees [¶¶8(i), 12(a) and 18], (2) the "cost of two broker price opinions" [¶19]; the cost of a Preliminary Judicial Report and a Final Judicial Report [¶20]; excessive amounts for title reports [¶21]; the "cost of late charges after acceleration" [¶22]; and "excessive costs for service of process" [¶26].[2] On the basis of these "improper charges", the plaintiffs claim that the defendants "improperly applied payments" [¶23]; improperly advised plaintiffs of "the amounts due" [¶24]; and "failed to advise" them of the "total amount in default. . ." [¶25].

Plaintiffs' legal contentions in paragraphs 2 and 18 are contrary to Ohio and federal law. Hence, all the claims based on these legal assertions are subject to dismissal for failing to state claims for relief. All of the alleged "improper charges" stem from costs expressly covered by the very "reinstatement" provision contained in the plaintiffs' mortgage.

Paragraph 19 of the Mortgage (page 10 of 13, highlighted below, as attached to the Foreclosure Complaint) expressly "conditions" the right to reinstate the mortgage upon payment of the so-called "improper charges" alleged in the Complaint. Paragraph 19 provides:

> 19. Borrower's Right To Reinstate After Acceleration. ***If the Borrower meets certain conditions***, Borrower shall have the right to have an enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of judgment enforcing this Security Instrument. ***These conditions are that Borrower***: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or

---

[2] All of the allegations relating to so-called "excessive" costs are conclusory since plaintiffs do not allege the actual amounts charged or any standard for judging "excessive" from "non-excessive". Under Rule 12(b)(6), this court need not accept as true conclusory legal conclusions. *See Mezibov v. Allen*, 411 F. 3d 712 (6th Cir. 2005) ("[C]onclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss.")

agreements; (c) **pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the property and rights under this Security Instrument**; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the property and rights under this Security Instrument, and Borrower's obligation to pay the sum secured by the Security Instrument, shall continue unchanged. Lender may require that Borrowers pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender; (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (b) Electronic Funds Transfer. Upon reinstatement by Borrower, the Security Instrument and obligation secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

Paragraph 31 of the Complaint alleges that on March 7, 2006 the plaintiffs "paid those improper charges" (that is, the charges expressly covered by paragraph 19(c)-(d) of the mortgage). Accordingly, a default judgment taken against the Klines in the Foreclosure Action was vacated on March 27, 2006 upon the "represent[ation] to this court that Defendant [Mr. Kline] has reinstated the mortgage at issue herein..." See attached Exhibit B, March 27, 2006 foreclosure action journal entry.

Having taken advantage of their contractual right of reinstatement, the Klines now claim that the Reimer firm violated the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et. seq.* ("FDCPA") (First Claim For Relief, Complaint ¶¶ 34-37); the Ohio Consumer Sales Practices Act, O.R.C. § 1345.01 *et. seq.* ("CSPA") (Second Claim For Relief, Complaint ¶¶39-41); that the Reimer firm was unjustly enriched by the Klines (Third Claim For Relief, Complaint ¶¶43-45); and breached the mortgage contract (Fourth Claim For Relief, Complaint ¶¶47-48).

4

### III.    Controlling Law

A motion to dismiss under Civ. R. 12(b)(6) attacks the legal sufficiency of the complaint. *Roth Steel Prod. v. Sharon Steel Co.*, 705 F.2d 134, 155 (6th Cir. 1983). In determining whether dismissal on this basis is appropriate, the complaint must be construed in the light most favorable to the plaintiff, and all well-pleaded facts must be accepted as true. *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S. Ct. 1683, 40 L. Ed. 2d 90 (1974); *Bower v. Federal Express Corp.*, 96 F.3d 200, 203 (6th Cir. 1996); *Misch v. The Cmty. Mutual Ins. Co.*, 896 F. Supp. 734, 738 (S.D. Ohio 1994). A claim will be dismissed if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46, 78 S. Ct. 99, 2 L. Ed. 2d 80 (1957). However, conclusory statements of opinion or law need not be accepted as true. *Mezibov v. Allen,* 411 F. 3d 712 (6th Cir. 2005).

### IV.    Law and Argument

### A.    The Fair Debt Collection Practices Act Claim Must Be Dismissed.

**1.    Plaintiffs Have Failed To Allege That The Reimer Law Firm Is a "Debt Collector" With Respect To Its Post Foreclosure Filing Communications On Contractual Reinstatement. In Any Event, Such Communications Are Not "Debt Collection" Activities Under The Act Since They Have Nothing To Do With Collection Of The Antecedent Contractual Debt, But With Contractual Reinstatement After Default.**

Plaintiffs' claims under the FDCPA fail on their face because HomEq is not a "debt collector" as defined under 15 U.S.C. ¶1692a(6)(F). As the Sixth Circuit Court of Appeals has stated,

> Exempted from the definition of a debt collector, however, is "any person collecting or attempting to collect any debt owed or due or asserted to be owed or due another to the extent such activity ... concerns a debt which was not in default at the time it was

5

obtained by such person."

*Montgomery v. Huntington Bank*, 346 F.3d 693 at 698 (6th Cir. 2003), quoting 15 U.S.C. §

1692a(6)(F)(ii), (iii).  The Fifth Circuit Court of Appeals has held that "a debt collector does not

include the consumer's creditors, *a mortgage servicing company*, or an assignee of a debt, as

long as the debt was not in default at the time it was assigned."  *Perry v. Stewart Title Co.*, 756

F.2d 1197, 1208 (5th Cir. 1985) (emphasis added).

In *Montgomery*, the Sixth Circuit affirmed the district court's dismissal of a complaint

under the FDCPA for failure to state claim for relief.  The defendants were a bank (with a

security interest in a motor vehicle) and the repossession agency hired by the bank to repossess

the vehicle after its owner defaulted under the security agreement and loan.  In affirming the

dismissal, the court described the purposes for which the FDCPA was enacted:

> [T]he FDCPA was enacted in order "to prevent the 'suffering and
> anguish' which occur when a debt collector attempts to collect
> money which the debtor, through no fault of his own, does not
> have." [*Jordan v. Kent Recovery Service, Inc*., 731 F. Supp.] at 658
> (citation omitted).  In contrast, the court found that the evil sought
> to be prevented by proscribing the conduct of debt collectors,
> namely, "harassing attempts to collect money which the debtor
> does not have due to misfortune," is not implicated in this situation
> of the repossession agency that enforces a "present right" to
> security interest because in the latter context, "an enforcer of a
> security interest with a 'present right' to the piece of secured
> property attempts to retrieve something which another person
> possesses but which the holder of the security interest still owns."
> Id. It noted that "unlike the debtor who lacks the money sought, the
> possessor of secured property still has control of the property.  Any
> failure to return the property to the rightful owner occurs not
> through misfortune, but through a deliberate decision by the
> present possessor to avoid returning the property." Id.  It was thus
> the court's the view that "the legislative history confirms that
> Congress intended an enforcer of a security interest, such as the
> repossession agency, to fall outside the ambit of the FDCPA for all

6

purposes except for the prohibitions described in § 1692 f(6)."

346 F. 3d at 346 F. 3d at 358.

Since the plaintiff in *Montgomery* had "not alleged any violation of § 6092f(6)", he "has not alleged that [the repossession agency] is a business whose 'principal purpose' is debt collection, or that it regularly collects or attempts to collect debts owed to another.  His allegations revealed only that [the repossession agency] was seeking recovery of the BMW that was posted as collateral for the personal loan given to Smith by Huntington Bank." Since the defendant was "simply acting as the repossession agency when it seized his mother's BMW", the court held it "does not qualify as the debt collector under §§1692d and §1692e..." 346 F.3d at 699. Here, there is no allegation in the Plaintiffs' Complaint that HomEq purchased or serviced the mortgage only after it was in default. Hence, HomEq must be considered a bona fide creditor and not a "debt collector" subject to the FDCPA.

Similarly, plaintiffs have failed to allege that the Reimer firm is a "debt collector" under the Act.  Nowhere in Plaintiffs' Complaint do they allege that the Reimer firm (which filed the foreclosure action on behalf of HomEq) is engaged in a "business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." There is no allegation in the Complaint that the defendant law firm was acting as a "debt collector" with respect to any of the claimed communications with plaintiffs relating to costs associated with the reinstatement provision of the mortgage.  Without that allegation, as required by 15 U.S.C. § 1692a, Plaintiffs have failed to state a claim against the Reimer firm for violation of the FDCPA.  See *Montgomery, supra*, at 701 (where plaintiff "has not alleged that Silver Shadow is a business

7

whose 'principal purpose' is debt collection, or that it regularly collects or attempts to collect

debts owed to another ... the district court did not err in dismissing the complaint").

    **2.  The Alleged Mortgage Foreclosure Activities Are Outside the FDCPA**

   Even if this Court presumed that Plaintiffs had properly alleged that the Reimer firm was

a "debt collector," many courts have held that litigation activities by lawyers in mortgage

foreclosure actions are not within the scope of the activities regulated by the FDCPA.  See

*Beadle v. Haughey*, 2005 U.S. Dist. LEXIS 2473; *Rosado v. Taylor*, 324 F. Supp. 2d 917, 924-25

(N.D. Ind. 2004); *Sweet v. Wachovia Bank & Trust Co., N.A.*, 2004 U.S. Dist. LEXIS 29862,at *2

(holding that "the FDCPA does not cover foreclosure as 'debt collection.'"); *Bergs v. Hoover,*

*Bax & Slovacek*, 2003 US Dist. LEXIS 16827 at * 13 (communications sent to debtor by attorney

after service of a notice of foreclosure were "not subject to the FDCPA because it was sent in

pursuit of the foreclosure proceedings."); *Hulse v. Ocwen Fed. Bank*, FSB, 195 F. Supp. 2d 1188,

1204 (D. Or. 2002) (holding that "activity of foreclosing on the property pursuant to a deed of

trust is not the collection of the debt within the meaning of the FDCPA" and that a plaintiff "may

not maintain any FDCPA claims based on alleged actions made in pursuit of the actual

foreclosure."); *Heinemann v. Jim Walter Homes, Inc*., 47 F. Supp. 2d 716, 722 (N.D.W. Va.

1998), aff'd without opinion, 173 F.3d 850 (4th Cir. 1999).

   For instance, in *Rosado*, the district court after reviewing substantial precedent concluded

that "security enforcement activities fall outside the scope of the FDCPA because they are not

debt collection practices." 324 F. Supp. 2d at 923.  While a number of cases address a distinction

in the context of security enforcement actions against personal property[3], the court stated:

---

   [3] Citing *Nadalin v. Automobile Recovery Bureau*, 169 F. 3d 1084 (7th Cir. 1999).

> No different rule applies in cases involving real property; the smaller number of cases hold that a mortgage foreclosure is not a debt collection activity. *Bergs v. Hoover, Bax & Slovacek, L.L.P.*, 2003 U.S. Dist. LEXIS 16827, 2003 W. L. 2255679 at *3-*6 (N.D. Tex. Sept. 24, 2003); *Hulse v. Ocwen Federal Bank, FSB*, 195 F. Supp. 2d 1188, 12; 3-124 (D. Or. 2002); *Heinemann  v. Jim Walter Homes, Inc.*, 47 F. Supp. 2d 716, 7 22 (N.  D.W.V.a. 1988).  These decisions are eminently sensible, since "[a] mortgage is used to grant a security interest in real property. " Black's Law Dictionary 1357 (6th Ed. 1991). * * * [T]he law is rather clear that enforcing a security interest is not debt collection.

324 F. Supp. 2d at 923.

Accordingly, because the foreclosure litigation activities are not within the scope of the FDCPA, Plaintiffs' First Claim For Relief must be dismissed.

>### 3.  The "Improper Charges" Regarding The Payment Of Attorneys Fees And Foreclosure Litigation Costs And Fees Arise From The Contractual Reinstatement Provision Of The Mortgage. They Are Not Debt Collection Activities, Nor Are They Contrary To Any Statutory Provision Under The FDCPA Or Ohio Common Law.

Plaintiffs claim that the Reimer firm "attempted to collect amounts ... that were not owed" in violation of 15 U.S.C. § 1692e.  (Complaint, ¶34). But the alleged facts underlying the FDCPA claim are that the Reimer firm (along with HomEq) "improperly charged" fees to obtain reinstatement, such as attorneys fees (Complaint at ¶2, 18), broker price opinions (Complaint, ¶19), judicial title reports (Complaint, ¶20), and late charges (Complaint, ¶22), and added "excessive" fees for title reports (Complaint, ¶21) and service of process (Complaint, ¶26).[4]

---

[4] Thus, plaintiffs only allege that the fees were "improperly charged" under paragraphs 2 and 18 of the Complaint on the basis that the fees "are not permitted by federal or state law" and are "prohibited by the FDCPA, the OSCPA, and other relevant Ohio statutory and common law." The claim is that because the fees were legally "improper" (that is, not legally chargeable), the Reimer firm should not have communicated to the plaintiffs that they were "due and owing" upon reinstatement.

However, it is settled law that allegedly "excessive" fees do not constitute a violation of the FDCPA. As the court stated in *Bank. Estate of Bull v. Asset Acceptance, LLC*, 444 F. Supp. 2d 946 (N.D.Ind. 2006), "If Plaintiff questions the reasonableness of the fees, ... it has various ways to challenge them.

9

Under 15 USC §1692e(2)(A) and (B), a debt collector "may not use any false, deceptive, or misleading representation or means in connection with the collection *of any debt*" including any false representations about "the character, amount, or legal status *of any debt*" or "any services rendered or compensation which may be lawfully received by any debt collector *for the collection of a debt*." Thus, the amounts claimed to be a violation of the Act <u>must</u> relate to, concern or amount to a "debt" and its "collection." A debt collector may not act "to collect any debt...*unless such amount is expressly authorized by the agreement creating the debt or permitted by law*." 15 USC §1692f and f(1).(Emphasis added)

The gravamen of Plaintiffs' FDCPA claim is that the Reimer firm asserted on behalf of HomEq that to obtain reinstatement plaintiffs would have to pay reasonable attorneys fees, the costs for broker price opinions, judicial title reports, and late charges (and, presumably, whatever the alleged "excessive" fees were for other services) violated 15 U.S.C. § 1692f (Complaint at ¶35).  However, paragraph 19 of the mortgage expressly authorizes the charging of those fees, *not as part of the antecedent debt owed* (which is the subject of the foreclosure action), but as a "condition" for reinstatement of the loan and mortgage.  Paragraph 19 of the Klines' mortgage states:

> If Borrower meets certain conditions, Borrower shall have the right
> to have enforcement of this Security Instrument discontinued ....

---

But pursuing an FDCPA claim is not one of them." See also, *Singer v. Pierce & Assoc., P.C.*, 383 F. 3d 596, 598 (7th Cir. 2004)(stating in a dunning letter an amount of attorneys' fees owed does not violate FDCPA where the debtor had previously agreed to pay attorneys fees if he defaulted.). Merely contesting the reasonableness of the fees does not support a FDCPA claim. As stated in *Fields v. Wilber Law Firm*, 383 F. 3d 562, 565 (7th Cir. 2004): "But when a debtor contractually agrees to pay attorneys' fees and collection costs, a debt collector may, without a court's permission, state those fees and costs and include that amount in the dunning letter. Doing so does not violate the FDCPA." Of course, there was no dunning letter here with respect to the alleged attorneys fees and foreclosure litigation costs and expenses covered by section 19 of the Mortgage - - merely alleged communications during litigation about conditions affecting a right to reinstatement.

10

> Those conditions are that Borrower ... pays all expenses involved
> in enforcing this Security Agreement, including, but not limited to,
> reasonable attorneys' fees, property inspection and valuation fees,
> and other fees incurred for the purpose of protecting Lender's
> interest in the Property and rights under this Security Instrument ....

Exhibit A, attached Mortgage at 10 of 13, §19.  Since the alleged fees and expenses do not relate

to or concern the antecedent "debt" and its "collection," there can be no FDCPA violation under

Section 1692e or 1692f.

But even if this court were to conclude the alleged fees do concern or relate to the

antecedent "debt," they are then amounts "expressly authorized by the agreement creating the

debt" under Section 1692f(1). Therefore, again, there can be no FDCPA violation. Contrary to

plaintiffs allegations, the conditioning of contractual reinstatement upon the payment of

reasonable attorneys fees and litigation costs is, under Section 1692f of the Act, "expressly

authorized by agreement creating the debt or permitted by law." They are supported by numerous

state and federal court decisions interpreting Ohio law and applying the Act. Ohio state courts

have affirmed the legality of including attorneys' fees in the costs of mortgage reinstatement in at

least two decisions, *Washington Mutual Bank v. Mahaffey*, 154 Ohio App.3d 44, 51 (2003) and

*Wilborn v. Bank One Corp*., 2007 Ohio 596, 2007 Ohio App. LEXIS 565. In fact, this Court has

previously held that such fees may be legally imposed to obtain reinstatement. See *Davidson v.

Weltman, Weinberg & Reis*, 285 F.Supp.2d 1093 (S.D.Ohio 2003).

Without explicitly alleging it, plaintiffs appear to be basing their assertion of an

"improper charge" for attorneys fees on the case of *Miller v. Kyle*, 85 Ohio St. 186, 97 N.E. 372

(1911) that held in its syllabus that "stipulations incorporated in promissory notes for the

payment of attorneys fees, if the principal and interest be not paid at maturity, are contrary to

public policy and void." *Miller* has been substantially undermined by subsequent Ohio Supreme

Court decisions in *Worth v. Aetna Cas. & Ins. Co.*, 32 Ohio St. 3d 238, 513 N.E. 2d 253 (1087)

and *Nottingdale Homeowners Ass'n v. Darby*, 33 Ohio St. 3d 32, 524 N. E. 2d 702 (1987).[5]  In

*Mahaffey*, supra, the Ohio court of appeals rejected the plaintiffs' claim that a demand for

attorneys fees incurred in a foreclosure action as a condition for contractual reinstatement was

"unenforceable under Ohio law." Rather, the court held:

> In our view, all the cases [cited by plaintiffs]are distinguishable.
> *Mahaffey's* obligation to pay attorneys' fees is not provided in the
> mortgage instruments in this case as an obligation upon
> foreclosure, but is a condition of reinstatement of the loan.  While
> Mahaffey is entitled to all the legal protections afforded under the
> laws pertaining to the foreclosure of mortgage liens, including the
> right of redemption, he is not entitled by law to reinstatement of a
> mortgage loan, once it is in default.  Once a borrower defaults upon
> a mortgage loan, the lender is entitled to, even if the borrower
> should exercise his right of redemption, to be paid in full and sever
> its relationship with borrower.  The bank chose to provide in its
> contract with Mahaffey for the possibility that a loan might be
> reinstated, preserving the relationship between the borrower and
> lender, upon certain conditions.  One of these is the payment of
> attorney's fees. *We see nothing against public policy in imposing
> the requirement of the payment of attorneys fees expended in
> foreclosure proceedings as a condition of reinstatement of the
> mortgage loan*.  If the loan were not reinstated, the borrower would
> be entitled to its remedies in foreclosure, and it has expended
> attorneys' fees toward that end.  It is reasonable that the mortgagee
> should require, as a condition of abandoning the foreclosure action
> and reinstating the loan, that it recover its attorneys' fees expended
> in the foreclosure action that it is abandoning. * * * In our view, a
> requirement to pay attorneys' fees as a condition of reinstatement
> of a contract of indebtedness does not constitute an obligation to
> pay attorney's fees "that arises in connection with enforcement of a
> contract of indebtedness.' "

---

[5] *Worth* held that an indemnitor's express agreement to indemnify another for legal expenses is
enforceable and not contrary to public policy; *Nottingdale* held that a provision in a condominium
associations by-laws requiring payment of attorneys fees incurred in a collection or foreclosure action
for unpaid assessments is also  enforceable and not contrary to public policy.

12

154 Ohio App. 3d at 51-52.[6]

A case directly on point was decided by this court in *Davidson*, *supra*. There, as here, plaintiffs brought a putative class action alleging that a law firm had violated the FDCPA "by attempting to collect attorneys fees from her relating to her foreclosure, as a condition of the reinstatement of her mortgage." 285 F. Supp. 2d at 1094. The plaintiffs mortgage had a reinstatement clause that was *less specific* than paragraph 19 of the mortgage at issue here. The clause in *Davidson* did not expressly mention attorneys fees. The court framed the issue as follows:

> At the heart of this litigation is the question of whether Ohio law allows for contractual provisions for the payment of attorney's fees as a condition of the reinstatement of a mortgage.  All of plaintiffs claims flow from a resolution of that issue.

This court dismissed the plaintiff's Complaint for failing to state a claim for relief, reasoning:

> Having trod through the murky waters left by the Ohio Supreme Court in the wake of *Nottingdale*, the Court concludes that the rationale employed by the Second District Court of Appeals is, indeed, the correct one.  At the heart of Plaintiff's argument is the premise that payment of attorney's fees due to default is synonymous with the payment of attorney's fees in the context of reinstatement.  In other words, ... once void, always void.  This premise is faulty.  *Miller* and its progeny were concerned with attorney's fees constituting a penalty against the debtor upon default or breach of the contract.  Due to the decision in *Nottingdale*, the continued viability of that holding [in *Miller*]is in doubt.  The Court need not resolve that question, however, because, as indicated in *Mahaffey*, the requirement of the payment of attorney's fees as a condition of reinstatement does not arise in connection with the enforcement of the mortgage contract, i.e., the default itself.* * *

---

[6]The assessment of attorneys' fees may have been held to be unconscionable in the context of mortgage payoffs, where a consumer is able to pay or refinance the entire outstanding balance of her mortgage, and terminate the contractual relationship with her mortgagee.  However, that factual context is distinguishable from this case, as the Klines sought to reinstate their mortgage to its condition before default, not pay off the mortgage in its entirety.

Thus, the court held:

> Stated simply, under the current state of Ohio law, agreements to pay attorney's fees are not void under any and all circumstances. See *Nottingdale*, supra. To the contrary, the Ohio Supreme Court has recognized the right of individuals to agree to pay other's attorney's fees, even in the context of default or breach of contract, although with some limitations. Assuming the continued viability of *Miller*, defendant has made the payment of its reasonable attorney's fees a condition of reinstatement, not of default. Thus, those fees are permissible under Ohio law. In summary, the Court concludes that a provision in a mortgage which requires the payment of attorney's fees as a condition of reinstatement is allowed under Ohio law.

285 F. Supp. 2d at 1102-03.

Another case on point was decided in *Wilborn*, *supra,* by the Ohio Seventh District Court of Appeals. That court affirmed the trial court's dismissal of identical claims about the "improper charge" of attorneys fees as a condition for reinstatement. Relying upon the holdings in *Mahaffey* and *Davidson*, the *Wilborn* court approved the trial court reasoning that the "payment of attorney's fees in the context of a reinstatement of a mortgage is not synonymous with the payment of attorney's fees in the context of default on a note or mortgage. " 2007 Ohio App. LEXIS 565 at **5. The mortgage reinstatement clause in *Wilborn* contained identical language to paragraph 19 of the mortgage here, specifically permitting the borrower to obtain reinstatement upon the "condition" that the borrower:

> (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the property and rights under this Security Instrument, and Borrower's

14

> obligation to pay sums secured by this Security Instrument, shall
> continue unchanged.

While the plaintiff mortgagors had argued that the attorney fee provision was

"unenforceable as against public policy", the Court of Appeals noted that the Ohio Supreme

Court in *Worth v. Aetna* and *Nottingdale Homeowners Ass'n v. Darby* had approved the

enforcement of an attorney's fees provisions in contracts and declined to apply the older holding

in *Miller*.  The rationale was that in *Miller* a stipulation in a mortgage for the payment of

attorney's fees merely upon default benefitted only the mortgagee and not the mortgagor. By

contrast, a provision requiring the payment of attorney's fees (and other related court costs and

litigation fees) to obtain reinstatement is

> ...not in the sole interest of the lender.  The provision allows the
> borrower to work out an agreement with the lender and retain their
> home.  Additionally, it is unlike the situation in *Miller* where it was
> clear that the attorney fee provision was one-sided in favor of the
> lender and acted as a penalty upon the borrower.
>
> Second, the distinction highlighted in *Mahaffey* is persuasive.  The
> payment of attorney fees is only a condition for reinstatement, not
> an obligation that arises in connection with the enforcement of the
> loan contract.

796 N. E. 2d at 46.  Here, the Plaintiffs' Complaint does not identify any statutory authority for

the proposition that the fees they paid were illegal or improper; in fact, the decisions listed above

confirm that the fees allegedly paid by Plaintiffs do not violate the FDCPA or Ohio common law.

Accordingly, the Plaintiffs have failed to state a claim for relief under the Act.

### 4.    The Plaintiffs Fair Debt Collection Practices Act Claims are Barred by the One-Year Statute of Limitations.

An FDCPA claim must be brought within one year from "the date on which the violation occurs." 15 U.S.C. 1692k(d). Plaintiffs allege that Reimer firm violated the FDCPA by "routinely demand[ing] attorneys fees and costs which are in excess of the amounts actually owed by consumer debtors to reinstate...under the mortgage." Complaint ¶12(a). The Reimer firm filed the foreclosure lawsuit against the Plaintiffs on August 29, 2005. Reinstatement of the loan was discussed between the Reimer firm and the Plaintiffs in two letters dated November 18, 2005 and December 6, 2005, copies of which are attached[7] as Exhibits C[8] and D.

It is anticipated that plaintiffs will contend that the limitations period did not accrue until, as alleged in paragraph 31 of the Complaint, March 7, 2006 when they paid the alleged attorneys fees and related foreclosure litigations costs due under paragraph 19 of the mortgage to obtain reinstatement. The Complaint in this case was filed on March 6, 2007 – just one day before the

---

[7] The attachment of these letters should not convert this Rule 12(b)(6) motion to a summary judgment motion under Rule 56. Although, a court may not generally consider matters outside the pleadings in ruling on a 12(b)(6) motion to dismiss, the Sixth Circuit has held that documents that a Defendant attaches to a motion to dismiss will be considered part of the pleadings which are referenced in the Complaint and are central to the Plaintiffs claim. See *Weiner v. Klais and Co., Inc.,* 108 F.3d 86, 89 (6th Cir. 1997). Here, in ¶18 of the Complaint , Plaintiffs allege that the Reimer firm "routinely demanded attorneys fees and cost" associated with amounts required "to reinstate...under the mortgage." The two attached letters are the means in which the Reimer firm "routinely demanded" the alleged "improper charges" and are central to the issue as to when the alleged FDCPA violation occurred as alleged in ¶18 of the Complaint. Thus, pursuant to *Weiner,* they may be appended to this Motion and considered as part of the Motion to Dismiss.

[8] Exhibit F, the November 18, 2005 letter to Mr. Kline from the Reimer firm advised him of the amount, through November 30, 2005 required to reinstate the mortgage/loan. Kline was told that the amount included an estimate of court costs which would be adjusted via a refund of any costs collected in excess of the actual costs as later determined by the court. The letter also attached a breakdown of the various reinstatement costs for attorneys fees and related foreclosure litigation costs (totaling $3,300.00)as covered by section 19 of the mortgage as follows:

"$3330 includes fees of $900 attorney fees (our office charge for legal service) and Costs of $2343....Preliminary Judicial Report (Title Report on the property which is mandated by the court), of $812, Complaint filing with the court (court charge of $521.00 to file a complaint of $521, Final Judicial Report (title Report to show no additional liens on the property since time of filing complaint mandated by the court) of $150, Process Server's (charge to serve all defendants listed in the complaint) Service of $860."

On what basis the plaintiffs allege any of the above costs/fees are "excessive" is unknown (and not alleged). But in any event as established in footnote 4, claims of "excessive fees" do not state an FDCPA claim.

16

passing of the one-year limitations period after that date. Thus, unless the one-year statute of limitation period accrues <u>only</u> on the date the plaintiffs actually <u>paid</u> the amounts charged to obtain reinstatement, the Complaint is time barred.

However, Plaintiffs' "date of payment" accrual theory must fail. Under 15 U.S.C. §§ 1692e(1)-(16), "violations" of the Act occur when a "false representation" or prohibited "communication" is *made*. Thus, the statute of limitations begins to run when a communication violating the FDCPA is sent. See *Peoples v. Wendover Funding*, 179 F.R.D. 492, 499 (D. Md. 1998). The accrual date under Section 1692k is <u>not</u> a payment date on the "debt" by a consumer, but the date a "false representation" or prohibited "communication" took place. That is the "date on which the violation occurs."[9] Hence, the alleged "violations" occurred, not when plaintiffs paid the alleged "improper charges", but at the latest, on the date the Reimer firm sent its <u>first</u> reinstatement letter to the Plaintiffs - - in this case the November 18, 2005 communication on the reinstatement cost that included the allegedly "improper charge" for attorneys fees and related court costs and litigation costs. See Exhibit C, attached. In *Sierra v. Foster Garbus*, 48 F. Supp. 2d 393, 395 (S.D.N.Y. 1998), the court rejected the theory that FDCPA claims "could be kept alive indefinitely because each new communication would start a fresh statute of limitations."

The only relevant consideration is the date of the alleged violation by the Reimer firm. In *Kirtcher v. Messerli & Kramer, P.A.*, 2006 U.S. Dist. LEXIS 3346, 2006 WL 145162 (D. Minn.

---

[9] Indeed, if plaintiffs' "date of payment" theory for accrual prevailed, a consumer could <u>for years</u> suffer through any number of "false representations" and prohibited "communications" by a debt collector, then sit around and do nothing for even more years, but then make a <u>payment</u> on the debt and file a FDCPA within one year of that payment. Clearly this type of delay is not permitted. If Congress had intended the date of "payment" of disputed charges to trigger the limitations period, instead of the "date of which the violation occurs", it could have so specified in Section 1692k. The only date listed within the Plaintiffs complaint that falls within one-year statute of limitations is the date in which the Plaintiffs paid to reinstate their loan. Because §1692k is silent about the conduct of the consumer, the date of the payment is irrelevant.

January 14, 2006), the court held that "the [FDCPA] violation accrues when the debtor receives

notice of the misrepresentation." In another case, the court in *Fraenkel v. Messerli & Kramer,*

*P.A.,* 2004 U.S. Dist. LEXIS 15196, 2004 WL 1765309 (D. Minn. July 29, 2004), held that

where a consumer had received a demand letter in violation of the Act, the repetition of the same

information in the filing of a Complaint did not begin the running of a new period of limitations.

The FDCPA claim was time barred. *See also*, *Akalwadi v. Risk Management Alternatives, Inc.*

336 F. Supp. 2d 492, 501 (D. Md. 2004) (dismissing FDCPA claim where plaintiff filed suit two

years after becoming aware of the alleged communication); *Flores v. Millennium Interests, Ltd.,*

273 F. Supp. 2d 899, 901 (N.D. Texas 2003) (where plaintiffs "knew of the negative credit report

in August 2000; their lawsuit, filed in February 2003 is one and one-half years too late.").

Accordingly, because the alleged violations of the FDCPA occurred outside of the one-

year statute of limitations, Plaintiffs First Claim for Relief must be dismissed.

**B.      Plaintiffs Claims Under The Ohio Consumer Sales Practices Act Also Fail As a Matter Of Law.**

      **1.      The Reimer Firm is Not Alleged To Be A "Supplier" Under ORC Section 1345.01(B).**

In order to fall under the CSPA, a defendant must be a "supplier" as defined by the Act.

This includes any "person engaged in the business of effecting or soliciting consumer

transactions, whether or not he deals directly with the consumer." O.R.C. § 1345.01(B).  There is

no allegation in the Complaint that defendant Reimer is a "Supplier" under that section.  Hence,

no CSPA claim has been stated.

      **2.      Plaintiffs' Complaint Does Not Allege Any Additional Facts Relating to the CSPA Claim in The Second Claim for Relief Than the Facts at Issue Under the FDCPA Claim.  The Complaint Does Not Allege Any Independent**

18

**False Statements or Misconduct. Hence, to the Extent the FDCPA Claim Fails as a Matter of Law, so too the CSPA Claim Fails.**

This legal point is obvious. In *Lewis v. ACB Bus. Servs.*, 135 F.3d 389, 411-12 (6th Cir. 1998), the Sixth Circuit affirmed dismissal of a plaintiff CSPA claims against an attorney where the factual underpinnings for that claim were no different than the FDCPA claims and those failed as a matter of law. The court stated that "[t]he dismissal of OCSPA claims against ACB and Connors were proper as well."

Even assuming that the Reimer firm is a "Supplier" as defined by the CSPA, Plaintiffs' allegations do not state a violation of the Act.  In summary fashion, Plaintiffs allege that the Reimer firm' "acts and practices are materially deceptive and misleading and deceived plaintiffs," without any further explanation.  (Complaint, ¶39).  Plaintiffs do not specifically allege that anything they were told by the Reimer firm was false; instead, they simply allege that the Reimer firm somehow violated some unspecified section of the Act in its representation of HomEq in the foreclosure action and reinstatement.  They allege nothing more than the so-called "improper charges" . The case law demonstrates that the charges are supported by substantial state and federal court case authorities (including from this court). They are also supported by the express language of the mortgage reinstatement clause. There is no contrary statutory provision barring those charges as a condition to reinstatement. Plaintiffs' CSPA allegations fail to meet the minimum standards of even "notice pleading," and do not state a claim for which relief can be granted.

**3.      Plaintiffs' CSPA Class Action Allegations Must be Dismissed.**

19

O.R.C. § 1345.09(B) is clear that class actions may only be maintained under the CSPA where the conduct being challenged has previously been declared to violate the CSPA by an Ohio court ruling or the Ohio Attorney General. In *Marrone v. Philip Morris USA, Inc.*, 110 Ohio St. 3d 5, 6 (2006), the Ohio Supreme Court held in its syllabus: "A consumer may qualify for class-action certification under Ohio's CSPA *only if* the defendant's alleged violation of the Act is substantially similar to an act or practice previously declared to be deceptive by one of the methods identified in R.C. 1345.09(B)." (Emphasis added). The "methods" set forth in section 1345.09(B) are as follows:

> (B) Where the violation was an act or practice declared to be deceptive or unconscionable by rule adopted under division (B)(2) of § 1345.05 of the Revised Code before the consumer transaction on which the action is based on, or an act or practice determined by a court of this state to violate section 1345.02, 1345.03, or 1345.031 [1345.03.1] of the Revised Code and committed after the decision containing the determination has been made available for public inspection under division (A)(3) of Section 1345.05 of the Revised Code....

In turn, section 1345.05(A)(3) provides that the Ohio Attorney General

> "shall ... make available for public inspection all rules and all other written statements of policy or interpretations adopted or used by the Attorney General in the discharge of the Attorney General's functions, together with all judgments, including supporting opinions, by courts of this state that determine the rights of the parties and concerning which appellate remedies have been exhausted or lost by the expiration of the time for appeal, determining that specific acts or practices violate [the act].

Here, Plaintiffs do not allege that the Reimer firm's conduct is substantially similar to any conduct found to violate the OCSPA by any rules adopted by the Ohio Attorney General or under any final judgments and opinions issued by an Ohio court which have been made available for

20

inspection by the Ohio Attorney General. Accordingly, their class action allegations must be dismissed under *Marrone*.

> **C.** **There is No Unjust Enrichment Claim Under The Third Claim For Relief Since There Is No Allegation That The Plaintiffs Conferred A Benefit Upon The Reimer Law Firm.**

Plaintiffs next claim that the Reimer firm was "unjustly enriched" by its conduct. However, Ohio requires a plaintiff suing for unjust enrichment to allege that he *directly* conferred a benefit on the defendant:

> To establish a claim for restitution, therefore, a party must demonstrate "(1) a benefit conferred by a plaintiff upon a defendant; (2) knowledge by the defendant of the benefit; and (3) retention of the benefit by the defendant under circumstances where it would be unjust to do so without payment ('unjust enrichment')."

*Hambleton v. R.G. Barry Corp.*, 12 Ohio St.3d 179, 183, 465 N.E.2d 1298 (1984). Here, Plaintiffs do not allege that they had a contractual relationship with the Reimer firm; in fact, they concede that the Reimer firm worked for HomEq. (Complaint ¶¶16-17). They do not allege that they paid any money directly to the Reimer firm, nor do they allege that they gave the Reimer firm any non-monetary benefit for which they deserve compensation. At best, their allegations amount to a claim that they paid money to HomEq and HomEq in turn paid Reimer. This chain of causation is too attenuated to state a claim for unjust enrichment under Ohio law.

In *Johnson v. Microsoft Corp.*, 106 Ohio St. 3d 278, 286 (2005), the Ohio Supreme Court held that where no economic transaction took place between the plaintiff and defendant, no unjust enrichment claim was stated. Other Ohio Federal District Courts have dismissed unjust enrichment claims where the plaintiff and defendant were not in privity of contract. See, e.g.,

21

*Hoffer v. Cooper Wiring Devices, Inc.*, 2007 U.S. Dist. LEXIS 42871; *Eisenberg v. Anheuser-Busch, Inc.*, 2006 U.S. Dist. LEXIS 4058. Here, because Plaintiffs explicitly acknowledge in their Complaint that they did not retain the Reimer firm, confer any direct benefit on it, or were in privity with it, their claim for unjust enrichment must be dismissed.

### D. The Fourth Claim For Relief For Breach of Contract Must Be Dismissed Because Plaintiffs Fail To Allege Any Contract Between Them And The Reimer Law Firm (And None Can Be Alleged).

Finally, Plaintiffs allege that the Reimer firm's conduct breached "agreements entered into between plaintiffs and defendants" and thereby caused them harm. (Complaint, ¶47). But the only alleged "agreement" is the mortgage and note, and, as discussed above, they concede that the Reimer firm was retained by HomEq.

It is indisputable that the Reimer firm is not a party to the contract at issue in this case. See Exhibit A, attached. "[T]he Court may consider documents introduced by the defendant, even if they were not attached to the initial complaint, so long as they were referenced in the complaint and are central to the plaintiff's claim." *Weiner v. Klais & Co.*, 108 F.3d 86, 89 (6th Cir. 1997). "Otherwise, a plaintiff with a legally deficient claim could survive a motion to dismiss simply by failing to attach a dispositive document upon which it relied." Id. Here, the parties to the mortgage and note were WMC Mortgage Corp. and the Klines. Exhibit A, attached, at page 3 ("Borrower and Lender covenant and agree as follows..."), identifying WMC Mortgage Corp. as "Lender" and Eugene Kline as "Borrower."

Because Plaintiffs' Complaint does not allege the existence of a contract between the Plaintiffs and the Reimer firm, and because the contract at issue does not name the Reimer firm as a party, Plaintiffs' claim for breach of contract against the Reimer firm must be dismissed.

Indeed, the breach of contract claim is frivolous.

## IV.    Conclusion

Plaintiffs' Complaint is facially defective.  Its allegations, even if true, do not state a claim for relief under the FDCPA or the CSPA.  Further, Plaintiffs' allegations do not sufficiently state a claim for unjust enrichment, and a cursory review of the mortgage contract at issue reveals that the Reimer firm is not a party to the contract allegedly breached.  Accordingly, all of Plaintiffs' claims against the Reimer firm should be dismissed, and judgment should be entered in the firm's favor.

Respectfully submitted,

s/ Robert H. Eddy
**ROBERT H. EDDY (0030739)**
**GEORGE H. CARR (0069372)**
Gallagher Sharp
Sixth Floor-Bulkley Building
1501 Euclid Avenue
Cleveland, OH  44115
Telephone: (216) 241-5310
Telefax:  (216) 241-1608
email:  reddy@gallaghersharp.com
           gcarr@gallaghersharp.com
*Attorneys for Defendant*
*Reimer, Lorber & Arnovitz Co., L.P.A.*

23